(21 App. Div. 110.)

### SIEBRECHT v. EAST RIVER GAS CO. OF LONG ISLAND CITY.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

GAS COMPANIES—NEGLIGENCE—ESCAPING GAS.

    Plaintiff owned greenhouses situated on the westerly side of a street. Defendant gas company's main pipe lay along the easterly side, and a service pipe, crossing the street under the rails of an electric street railway, connected it with a street lamp in front of the greenhouses. The service pipe was corroded by natural causes, or eaten away by electrolytical action, and allowed gas to escape; but, the ground being frozen, the gas percolated through the soil under the frozen crust till it reached the greenhouses, and then came to the surface and destroyed the growing plants within. There was a conflict of evidence on the question whether the time since the pipe was laid was in itself long enough, under the circumstances, to call for an inspection of its condition. It also appeared, without contradiction, that prior to the freezing of the ground there had been a strong smell of gas in the street at that point. *Held*, that the evidence was such as to warrant the jury in predicating negligence of the defendant on the failure to examine the pipe.

Appeal from trial term.

Action by William H. Siebrecht against the East River Gas Company of Long Island City. From a judgment entered on a verdict of a jury in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Sherman Evarts, for appellant.

Henry A. Montfort, for respondent.

HATCH, J. By this action damages are sought to be recovered for negligence upon the part of the defendant in allowing a pipe laid in the ground near the plaintiff's premises, and used for the purpose of conveying gas, to become out of repair, so that the gas escaped therefrom, entered plaintiff's premises, and inflicted damage. The fact of the injury and its cause are without dispute. The plaintiff was a florist, and was the owner of certain greenhouses, situated on the westerly side of Debevoise avenue, in Long Island City. The gas mains ran upon the easterly side of the avenue, and a street lamp was situate directly in front of one of the greenhouses, on the westerly side. The lamp was supplied with gas by means of a service pipe three-quarters of an inch in diameter, connected with the main. The service pipe was laid in the ground, under the rails of a surface street railroad in the street, whose motive power was electricity. The service pipe did not connect or enter the greenhouses, or approach them nearer than the street lamp. When the service pipe was laid is a subject of conflict in the evidence; it being claimed by the plaintiff that it was laid in 1886, and by the defendant in 1888. In the winter of 1894 and 1895 the weather was very cold, and by the middle of December the ground was frozen to a considerable depth. The gas which escaped from the service pipe was prevented by the frozen ground from reaching the surface, in consequence of which it percolated through the soil until it came to the unfrozen ground beneath

the greenhouses, when it sought the surface, entered the greenhouses, and destroyed the plants growing therein. It is claimed by the defendant that it is not liable for this damage, for the reason that it has been guilty of no negligence. This claim is based upon the theory that it originally laid perfect pipes, the life of which, as demonstrated by experience, had not yet expired; that it was not aware of the escape of any gas, and could not be by any system of inspection, as none came to the surface of the ground, by reason of its frozen condition; that it immediately remedied the defect, and prevented the further escape of gas, on being notified; that the condition of the pipe was produced by the action of the electrical current used by the street railroad, which produced electrolytical action upon the pipes, corroding and eating the substance of the pipe until it permitted the gas to escape; that this action was only understood by scientific men, and defendant was without knowledge of it. Nor could such action be reasonably expected to have operated upon the pipe, if understood, on account of its distance from the power house where the electrical current was generated. We are therefore to see if this contention can be upheld. We assume that the defendant had authority to lay its pipes in the street, and that no negligence can be imputed by reason of the manner in which they were laid. The obligation resting upon the defendant required the exercise of ordinary care and prudence in the conduct of its business and in the distribution of its gas. No fixed standard can be stated by which ordinary care and prudence are to be ascertained. It is always to be measured by the dangers to be apprehended, and is therefore controlled by the particular circumstances of the case. Care and prudence required of the defendant watchfulness and vigilance commensurate with the dangerous character of the substance it was distributing, and this involves not only the careful laying of sound pipes, but also requires an efficient system of inspection, oversight, and superintendence. Holly v. Gaslight Co., 8 Gray, 123. The rule is the same in this state, where gas companies have been held to a high degree of vigilance in management and supervision. Schmeer v. Gaslight Co., 147 N. Y. 529, 42 N. E. 202; Evans v. Gas Co., 148 N. Y. 112, 42 N. E. 513. In the last case it was said by Judge Gray, "It was bound to use its rights and to conduct its operations so as not to inflict injury upon neighboring property." Governed by this rule, we think the evidence was sufficient to call for the submission of the case to the jury, and that its verdict thereon cannot be disturbed. It was testified by Henry Fisher, a witness called for the plaintiff, that in the fall of 1894 he sometimes went out in the evenings, after closing up business, and took the street car opposite plaintiff's greenhouses; that there was always a very bad smell of illuminating gas at that point. This testimony was not in any wise discredited, and there was no proof that there was any escape of gas from any other place than from this pipe. The jury were therefore authorized to find that the condition of this pipe permitted the gas to escape in perceptible quantities before the ground became frozen and held it. They were also justified in drawing the inference that this had existed for some time, and that competent inspection would have discovered it. Finding these facts, the jury were author-

ized in arriving at the conclusion that the defendant had not exercised the degree of care and prudence which the law imposed, and was therefore guilty of negligence. And this must be the result whether the pipe was corroded by natural causes, or was eaten away by electrolytical action. There is also another ground on which negligence can be predicated,—somewhat closer, but still sufficient. We have already observed that there was conflict of testimony concerning the time when the pipe was laid. There was also conflict as to its life. The defendant's proof tended to establish that its life was 25 years; the plaintiff's, from 15 to 25 years, if laid in dry, hard, clay soil; if in wet places, where the water gets down quickly, it will corrode in 6 or 7 years. The jury could find that the pipe was laid in 1886, and, if so, it had been in the ground for six years; and, if the soil was wet where it lay, then a reasonable apprehension might arise that its life was exhausted, and prudence would dictate its examination. The defendant answers this by the claim that plaintiff's witness said it was light, sandy soil, and therefore it could not reasonably be supposed that dangerous corrosive action had taken place. This claim overlooks other testimony in the case. The evidence of the defendant is that dry earth would not conduct the electrical current at all. Moist earth is required, and the greater the moisture the better the conductor. This pipe was very badly eaten. It could not be told from inspection whether this was produced by the electrical current, or by the ordinary action of the salts of the earth. If it was electrical action, it must have been in a moist envelope, and the same is true if it was natural corrosion. The jury saw the pipe, heard the testimony, and they could well have said that its condition was produced from lying in a wet place. The character of the place should have been known, for the defendant made the excavation and laid the pipe therein. This evidence is more than a scintilla; it had substance in it; and the jury were authorized to predicate negligence of the defendant for a failure to examine the pipe, under such circumstances. The evidence was clearly sufficient to exonerate the plaintiff from contributory negligence, and this question requires no discussion at our hands.

There is no error in the judgment, and it should be affirmed, with costs. All concur.