John Bakovich, Plaintiff-Appellee, and J. M. Corbett Company, a Corporation for the Use of Liberty Mutual Insurance Company, a Foreign Corporation Intervenor-Plaintiff-Appellee, v. The Peoples Gas Light and Coke Company, a Corporation, Defendant-Appellant.

Gen. No. 49,000.

First District, Second Division.

November 22, 1963.

Ross, McGowan, Hardies & O'Keefe, of Chicago (George J. O'Grady and R. Marlin Smith, of counsel), for appellant.

Jerome H. Torshen, Nat P. Ozmon and Samuel E. Bublick, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court:

John Bakovich brought an action to recover damages for personal injuries sustained on June 1, 1955. He was injured in the employ of the J. M. Corbett Company, a contractor engaged in the excavating of

the right of way for the Congress Street Expressway in Chicago. Plaintiff's injuries were sustained when another employee of the Corbett Company, while operating a power shovel, broke into a gas main of The Peoples Gas Light and Coke Company, causing a fire in which plaintiff was burned. Corbett Company, for use of an insurance company, was granted leave to intervene for the purpose of asserting its Workmen's Compensation lien in the amount of $4,130.82, covering compensation and medical expenses incurred on account of plaintiff's injury. The court required a remittitur of $7,500 to the verdict of $25,000 and entered a judgment against defendant for $17,500. Plaintiff reserved the right to claim that the verdict was proper. Defendant appeals. Plaintiff asks that judgment be entered for the $25,000 awarded by the jury.

Plaintiff's employer, the J. M. Corbett Company was making excavations in the construction of the Congress Street Expressway which extends in an easterly and westerly direction across and beyond the City of Chicago. The excavation work progressed from east to west. On June 1, 1955, Corbett reached the east curb of Green Street which extends in a northerly and southerly direction across Congress Street Parkway, the name at that point of the narrower street in the path of the expressway. The Expressway as it extends westward, passes beneath all streets it transverses from a northerly and southerly direction. The project required the removal and relocation, particularly at intersections, of the city's electrical conduits for street lighting, for police, fire department and traffic communications and signals, sewers, water mains, electrical telephone and telegraph cables, as well as the gas mains of the defendant.

The State of Illinois provided Corbett, as part of its contract with it, a composite blueprint of all existing utilities. This blueprint bears the legend

183

"Plan of Existing Conditions." Corbett was working off of this Plan of Existing Conditions on June 1, 1955. The plan shows a gas main twenty inches in diameter running in a northerly and southerly direction in and parallel with Green Street and its connection with a portion of another main six-inches in diameter and extending in an easterly and westerly direction. The six-inch main extended about thirteen feet east of the twenty-inch main. In 1955 the east and west main in Congress Street had been abandoned, except the thirteen foot section. There was gas in the thirteen foot section because it was connected to the twenty-inch main. Some of the witnesses speak of the thirteen foot section as the stub. Plaintiff says that the stub was sixteen feet in length. The evidence shows that it was about thirteen feet in length. In the amended complaint upon which plaintiff relies he speaks of the east-west six-inch main as thirteen feet of gas main. An instruction given at the request of the plaintiff also speaks of the thirteen foot section of the east-west Congress Street main.

The plan shows a vault of the Commonwealth Edison Company bearing the initials "C.E.C.V.V." The west end of the vault of the Edison Company was approximately a foot to eighteen inches from the twenty-inch main. The six-inch main ran practically tight or adjacent to the north wall of the Edison vault. The six-inch gas main was north of this wall. On June 1, 1955, the defendant started to cut off or abandon both of its mains. The retirement of these facilities was to be accomplished by cutting off the twenty-inch main in Green Street at Van Buren Street on the north and at Harrison Street on the south. The abandonment of the twenty-inch main in Green Street would, of necessity, cut off the supply of gas to the remaining portion of the six-inch east and west main in Congress Street. In its prior excavations Corbett had left the vault of

184

the Edison Company intact. The Edison Company had removed its cables from this vault. The Edison Company vault extended about two feet east of the curb line of Green Street and at about the center of its intersection with Congress Parkway. The curb line is the line extending from the curb on one side of the street to the curb on the other side.

At about 10:30 a. m. on the day of the occurrence, Joseph Mason, a superintendent of Corbett and Gene Curry, a foreman for Corbett, had a conversation with defendant's foreman. Corbett did not intend to use any power shovels at the site on this day. The shovel work was advanced by Corbett because one of its drag lines was not working. For this reason Corbett decided to use a power shovel. There was considerable rubble on the east side of Green Street and Mason, the superintendent of Corbett, wanted to have the rubble picked up. Defendant's foreman gave permission to Corbett to put its power shovel to work in the rubble area at the east side of Green Street. It was understood that the shovel would be kept approximately six feet away from the curb line. Both Mason and Curry testified that defendant's foreman assigned a man to follow the operation in case the shovel came into contact with house outlets, leaders or service pipes running from the main to a house or building. These service pipes are not shown on the plan. Mason, the superintendent for Corbett, was familiar with the underground system of the defendant. He knew that the mains of the defendant intersected at street intersections and he was aware that there remained a portion of a six-inch gas main in Congress Parkway and that this main carried gas. In answer to an interrogatory the defendant said that the purpose of having its employee at the intersection of Green and Congress was "precautionary." An employee of defendant was in fact sent and remained in the vicinity of the Corbett rig as it worked

along the east edge of Green Street. Defendant's employee was observed by the employees of Corbett. He stood along Green Street observing the operation of Corbett's shovel. Defendant's foreman stated "that there was absolutely no danger."

No question regarding the interpretation of the Plan of Existing Conditions as given by the State to Corbett is involved. Mason admitted that the plan showed the existence of both mains and that they were interconnected. There was no mention made of either the twenty-inch main or the six-inch main in the discussion between Mason, Curry and defendant's foreman. Mason left the site of this work to go to another job shortly after his conference with defendant's foreman. He left Curry in charge of the work. Curry decided to take the Edison vault out. Defendant was not informed of Curry's intention to dismantle the Edison vault. The Edison vault was not discussed in the conference Mason and Curry had with defendant's foreman. The shovel was then put to work along the east side of Green Street. Jack Hallberg was the operator. He did not have a map or plan showing the existence of defendant's mains. The shovel was operated in a northerly or north-westerly direction.

Plaintiff was employed by Corbett as a truck driver. He was taking loads of debris from the excavation and dumping them at 35th and Kedzie, Chicago. At about 2:30 p. m. plaintiff returned with his truck to Congress and Green. The pavement on Green Street was intact. Normal vehicle traffic was shut off. When plaintiff came back to the site of the work he parked his truck so that it was facing south and within a few feet of the east edge of Green Street. The street dropped off at that point. The shovel was down in the area being excavated. The truck was about six feet higher and parked within swinging distance of the shovel. Plaintiff had parked his truck directly

186

over the vault of the Edison Company. Hallberg then operated the shovel so that it broke through the south and the east walls of the vault of the Edison Company. An explosion and fire ensued when the six-inch main was pierced by the power shovel. Plaintiff was "half sitting" on the driver's seat with his feet on the running board of the truck at the time Hallberg broke the gas main. Plaintiff was hospitalized.

We turn to a consideration of the contention of defendant that the court erred in not directing a verdict for it or, in the alternative, in not entering judgment notwithstanding the verdict. Plaintiff in arguing for affirmance of the judgment says that defendant, who with Corbett was engaged in a major public project (1) undertook along with Corbett, responsibility for the safety of Corbett's employees insofar as potential danger from defendant's mains was concerned or, (2) placed itself in a position whereby Corbett and its employees could rely upon defendant and its employees for their safety insofar as any danger from defendant's mains may have existed and that in the circumstances a duty arose to use ordinary care and skill to avoid the danger. Plaintiff states that the record shows that it is customary practice in dealing with public utilities during excavations to confer with the supervisory employees of the utilities company; that Corbett employed customary safety measures; that Corbett consulted with defendant, which had superior knowledge of the area; that defendant offered both advice and direction and stationed an employee to give directions to Corbett and observe Corbett's work for precautionary purposes; and that if the proximate cause of the occurrence was the negligence of Corbett, a joint actor in the prosecution of the work, defendant is equally negligent and thus liable for all damages sustained by plaintiff. Plaintiff maintains that Corbett and its em-

187

ployees relied upon defendant for their safety in the performance of their work and that defendant advised them it was safe to proceed. Plaintiff insists that the defendant reasonably should have anticipated that having given directions to Corbett's employees and having assigned an employee to observe, for precautionary purposes, Corbett's operation, that Corbett's power driver would act in the way in which he did act.

Corbett was aware of the existence and the location of the six-inch main which was broken by its shovel operator. Defendant owed plaintiff no duty to protect him from the negligence of his employer. Joseph Mason, the superintendent of Corbett, was aware of the existence and location of the main that was broken by the shovel operator. The Plan of Existing Conditions furnished to Corbett by the State showed the location of the gas main in Green Street and the remaining six-inch main in Congress Parkway and the intersection of these mains. Mason knew that the remaining portion of the six-inch main in Congress Parkway was adjacent to the vault of the Edison Company. It was the duty of Corbett to warn Curry and Hallberg of the existence of these mains and to protect plaintiff from injury. No such duty devolved upon defendant. Alesi v. City of New York, 9 App Div2d 236, 192 NYS2d 929, affd 12 NY2d 703, 185 NE2d 916; Wellman v. East Ohio Gas Co., 160 Ohio St 103, 113 NE2d 629; Merlo v. Public Service Co. of Northern Illinois, 381 Ill 300, 45 NE2d 665; Hale v. Johnson, 80 Ill 185; Haugh v. Joseph T. Ryerson & Son, Inc., 171 Ill App 414, 418. The purpose of warning is to apprise a party of the existence of a danger of which he is not aware and thus to enable him to protect himself against it. The Corbett Company and its superintendent knew the location of defendant's mains. There is no duty to warn against risks which

188

are known and obvious. It would be difficult for the various utilities engaged in public projects to supervise the work of one another. Plaintiff was injured by reason of the negligent manner in which his employer conducted his work and not through any negligence of defendant.

We agree with the contention of defendant that the chronological sequence of events shows that defendant could not foresee that plaintiff's employer intended to demolish the vault of the Edison Company and as a result thereof break the six-inch gas main. Mason, the superintendent and Curry, the foreman of Corbett, consulted with defendant's foreman about 10:30 a. m. They asked permission to cut along the east side of Green Street intending to put into use a power shovel. Curry testified that in the conversation with defendant's foreman, he and Mason decided to keep approximately six feet away from the curb line. The Edison vault extended about two feet beyond the existing curb line. Mason left the site of the work to go to another job. Had he remained at the site it is reasonable to assume that he would have given proper directions to Curry as well as Hallberg. Curry was left in charge of the work. Curry assumed that the six-inch main had been disconnected. He offered no explanation for his conduct except that defendant's foreman stated that there would be no possibility of any danger. Curry had no right to assume that the six-inch main in Congress Parkway was not interconnected with the twenty-inch main. Mason, the superintendent, was aware of the existence of the six-inch main and that it was interconnected with the twenty-inch main. Defendant's employees had not disconnected the mains. Plaintiff's injury was destined to occur when Curry decided to take the Edison vault out and leave only the west wall of the vault intact. Defendant was not informed of Curry's intention to dismantle or to take

out the Edison vault. This vault was not mentioned in the discussion between Curry, Mason and the defendant's foreman. Curry in fact arrogated to himself the responsibility of determining what support should be given to defendant's twenty-inch main, which was directly behind and to the west of the Edison vault. Defendant had no knowledge that Corbett intended to make any excavation inside the curb lines of Green Street. The circumstances required Curry to inform defendant that he intended to take out or dismantle the Edison Company vault. The defendant had the right to consultation as to the protection to be given to its main in Green Street. Defendant was not required to assume that Corbett did not know its business. No one is bound to anticipate the negligence of another. Dabrowski v. Illinois Cent. R. Co., 303 Ill App 31, 42, 24 NE2d 382; Kuhn v. Goedde, 26 Ill App2d 123, 129, 167 NE2d 805; Merlo v. Public Service Co. of Northern Illinois, 381 Ill 300, 45 NE2d 665.

Defendant's foreman recognized the possibility that in the operation of the shovel some outlets or leaders from the main to the demolished buildings might be struck. Defendant assigned one of its employees to guard against this possibility. This assignment was a precautionary measure to guard against the possibility that the shovel might strike service pipes or leads running from the gas mains to the houses. There were no service pipes leading to houses in the middle of the intersection. Defendant and its employees might well assume that Corbett would not undertake to knock down the vault while one of its trucks was parked on top of it. There is no evidence that defendant's foreman and its employees were aware that Curry and Hallberg intended to dismantle the vault. It is unfortunate that Mason, the superintendent, did not communicate to his subordinates his knowledge of the existence of the six-inch main immediately north of

190

the Edison vault. Apparently Curry did not have a copy of the Plan of Existing Conditions. Perhaps Mason thought that he would get back to the site in time to give appropriate directions.

In the conversation between Mason, Curry and defendant's foreman neither the twenty-inch nor the six-inch main was discussed. The defendant had a right to assume that Corbett was aware of the location of its mains which were plainly shown on the plan supplied by the State. Curry's assertion that defendant's foreman advised him that there would be no danger in making the excavations must be construed in the light of Curry's representation that the power shovel operation would be in a rubble area six feet away from the curb line.

The testimony relative to custom is predicated upon Curry's assertion that "if there is any doubt in your mind, you certainly have to consult with them because that's their business. They are working right there for that specific company, you know." Curry, did not advise defendant that he decided to knock down the vault of the Edison Company. He asked no questions about the location of any gas mains. He did not say anything about the location or length of the six-inch main. Hallberg had not been given instructions to "crack down" the Edison vault. Defendant took the precautionary measure of assigning a man to guard against the risk that some house outlets might be hit. Defendant did not volunteer to guide the shovel operator and did not direct this operator to knock down the Edison vault. At all times the shovel operator was under the control of Corbett. The plan supplied by the State was not complicated. The defendant had two mains, one extending in a northerly and southerly direction and the other a stub off of that main. The shovel operator required no directions from the defendant. The negligence was solely that of Corbett

191

because of the failure of Mason to impart knowledge of the dangerous condition to Curry and Hallberg. Neither Curry nor Hallberg knew of the existence of the six-inch stub. Defendant had a right to assume that plaintiff's employer knew how to read the plans supplied by the State and to carry out its contract. It was not bound to anticipate the negligence of the shovel operator.

We are of the opinion that it was the duty of the court to direct a verdict for the defendant. Therefore the judgment is reversed and the cause is remanded with directions to enter a judgment notwithstanding the verdict for the defendant and against the plaintiff.

Judgment reversed and cause remanded with directions.

FRIEND and BRYANT, JJ., concur.