James HUNT, Appellant,

v.

LACLEDE GAS COMPANY, a Corporation, Respondent.

No. 51279.

Supreme Court of Missouri, Division No. 1.

July 11, 1966.

Motion for Rehearing or for Transfer to Court En Banc Denied Sept. 12, 1966.

———◆———

James P. Hayes, Hayes & Hayes, St. Louis, William L. Mason, Jr., Galena, for appellant.

M. E. Stokes, F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent.

HOUSER, Commissioner.

A trial jury awarded James Hunt $60,000 in his action against Laclede Gas Company for damages for personal injuries sustained when an explosion of gas enveloped him in fire while sealing a joint inside a newly installed 5-foot sewer pipe. Laclede's post-trial motion for judgment in accordance with its motions for a directed verdict was sustained. Plaintiff has appealed, claiming that he made a case for the jury on both theories submitted —Laclede's failure to control its gas mains and pipes and its failure to warn plaintiff of the accumulation of gas.

Plaintiff was an employee of Bangert Brothers, a road construction firm which had a contract with State Highway Commission to widen Olive Street Road in St. Louis County. The work involved cutting a trench 8 to 10 feet wide and 10 to 16 feet deep and laying a 60-inch in diameter concrete sewer pipe designed to carry surface water. The trench was cut by Bangert employees, operating a Bangert-owned trenching machine known as a back hoe. Sections of concrete pipe 7½ feet in length would be lowered by machinery into the trench and the Bangert sewer crew, including plaintiff, would fit together the ends of the sections and seal the joints from the inside with a nonflammable compound known as Sewertite. As sections were installed they would be covered with sand, gravel and dirt by back-filling machinery. This was a continuing operation, progressing from west to east. A 2-inch gas main owned, operated and maintained by Laclede, buried 2 or 3 feet below the surface of the ground, ran roughly parallel to the pavement on the north side of the 7700 block of Olive Street Road, an east-west trafficway. The south edge of the trench was cut 2 or 3 feet north of the gas main. Six ¾-inch steel service lines ran from the 2-inch gas main to the premises of gas users located on the north side of the road. These service lines crossed the line of progress of the trench. The location of the underground gas mains, including service lines, water mains and underground electrical conduits, was shown on utility sheets supplied by the highway department, which were included in the plan of the project. Stakes and 2-foot stabs bearing the word GAS painted in red were driven into the ground to indicate the location of the service lines. Moving or changing the gas lines to accommodate construction was Laclede's function; Bangert had nothing to do with their relocation. On the date of the accident and for some time prior thereto employees of Laclede were working on this Olive Street job. Laclede's employees would go ahead of Bangert's crew up and down the road and "open" or dig out the gas lines, plug or cut off the gas being supplied to a particular address and change or relocate the lines, all as needed in connection with the cutting of the trench and the installation of the water pipeline. After the sewer pipe was installed Laclede would reconnect the service line. Laclede does this when gas lines are in the path of construction and obstruct the work. The gas in a service line having a curb cock can be cut off by the simple mechanical procedure of closing the

cock with a key. If there was no curb cock Laclede would take the cap off the tap hole and put a pin in the tap hole.

On the day in question Bangert's workmen commenced at the east end of the lot at number 7733 Olive Street Road and worked east in front of two residences located at 7721 and 7719. At the latter address Bangert employees encountered a tree stump, an obstruction that had to be dug out. Laclede employees were near the excavation and in the vicinity of the stump about 30 minutes before the explosion occurred. The whole operation of attempting to remove the stump, however, was done by Bangert employees; Laclede personnel were not present. There is no evidence that Laclede employees were informed or consulted with reference to the removal of the stump. There is no evidence that Bangert requested Laclede to shut off the flow of gas in the main west of the stump. Bangert employees, while digging around and prying on the stump, severed a Laclede gas pipe which was either a 2-inch main or a service line. A hissing noise (escaping gas) was heard. Bangert's assistant superintendent, Mr. Rauh, was present. When the pipe was severed Mr. Rauh went looking for Laclede personnel to report the break in the gas pipe. The break was reported to Laclede's office by telephone. A leak crew was immediately dispatched to the scene by mobile radio. A second leak crew in the general vicinity heard the broadcast and responded to the call. There is nothing to indicate how long after the break occurred the leak crews arrived at the scene. Mr. Rauh told the Laclede people that the gas line was broken and went with them to point out the break. Plaintiff was working alone inside the 5-foot sewer pipe at the bottom of the trench, 20 feet or more from the stump, at the time the gas line was severed. He was applying sealing compound to the last joint, 7 or 8 feet from the open end of the pipe. In his position he was not visible to persons on ground level. Neither plaintiff's supe-

rior, Mr. Rauh, nor any employee of Laclede knew that plaintiff was working there. There was a solid bank of earth between plaintiff and the stump. Several feet of unexcavated earth separated the east end of the trench from the site of the stump farther east. Plaintiff did not know that the gas line had been severed. No one warned him to leave the area. Although Mr. Rauh testified that he heard no order to clear the area and no warning to get people away from the broken pipe where the gas was escaping, it is conceded on this appeal that after Laclede's leak crew arrived at the scene and saw the situation and heard the gas escaping from the broken main, one of the men in charge of Laclede's crew said to Bangert's foreman that he had better get their folks or people, or the men, "out of here," "out of the vicinity or area." Plaintiff, who was working 7 or 8 feet inside the pipe, smelled gas. Just as he smelled gas he heard a noise he described as sounding like "Whoo"; described by another as "a small rumble." The whole pipe "from one end to the other" was completely filled with fire "just like sitting in a furnace." Plaintiff was severely burned. The explosion occurred 5 to 7 minutes after the Laclede crews arrived on the scene. Plaintiff had not previously smelled gas on the job.

There were no manual valves in the area by which the flow of gas in the main could have been stopped prior to the removal of the stump. It is not difficult to install such a valve. Such a valve, if in existence, could have been readily closed. Closing the valve in a main line would have effected an "outage" or interruption of service to all customers between the valve and the end of the line. To stop the flow of gas on a temporary basis, in case of a clean break in the main, a "climax plug" is inserted in the open end. The insertion of a climax plug is a time-consuming operation. There was no time to stop the flow of gas with a climax plug after the main was broken. Methods of effecting a

permanent stoppage include placing a valve in the line, or a stopper tee. Where there is a rough break or a flattening or twisting of the pipe a cut is made back where the pipe is round. It takes 1½ hours to insert a stopper tee.

Plaintiff's petition charged that Laclede negligently and carelessly permitted and allowed gas to escape from its main "by reason of the dangerous and defective condition" of its gas main. Plaintiff's verdict-directing Instruction No. 1 submitted breach of a duty on Laclede to exercise a high degree of care to prevent the escape of gas from its mains by negligently failing "to control" its gas mains and pipes. The submission was general. It did not specify in what manner Laclede failed to "control" its gas mains and pipes. Plaintiff does not contend that Laclede improperly constructed or maintained its underground mains and pipes, or that they had deteriorated and become rusty or otherwise incapable of containing the gas because of structural defects; or that Laclede was negligent in failing to turn off the gas or to repair after the main was broken. It is conceded that Laclede could not have done the latter; there was not sufficient time. Plaintiff in his brief and oral argument relies solely upon Laclede's failure to take preventive steps *before* the gas main was broken, not upon failure to take curative action thereafter. Plaintiff claims on this appeal that Laclede should have turned off the gas at some point west of the stump before Bangert's employees commenced to remove the stump; specifically, that Laclede should have controlled its gas "by shutting off the gas to and in such mains and pipes before such stump was * * * removed * * *, and thus and thereby have prevented the escape of gas from said main and pipes when they were broken in the course of such removal, but defendant negligently failed to use or provide such means and thereby prevent such escape." This raises the question whether there was a duty, under all of the circumstances in evidence,

to shut off all gas flowing through the main before Bangert's men commenced to remove the stump, so as to make the area completely safe. We do not think so. There is no evidence that the removal of the stump, if done with care, necessarily would result in breakage of the main. Bangert's employees were informed as to the existence and location of the gas main and pipes. Utility sheets were available to them. The lines were staked out. Markers were shown by plaintiff's evidence to have been near the stump, indicating the location of the lines. Laclede had the right to assume that Bangert would remove the stump in a nonnegligent manner, and had no duty to anticipate that Bangert's employees would remove the stump in a careless and negligent manner. This principle, referred to in Highfill v. Brown, Mo.Sup., 340 S.W.2d 656 [9], was recently applied in the cognate factual situation presented in Bakovich v. Peoples Gas Light and Coke Co., 45 Ill.App.2d 182, 195 N.E. 2d 260, wherein the court said, l. c. 264, 265: "No one is bound to anticipate the negligence of another. * * * [Defendant] was not bound to anticipate the negligence of the shovel operator." It was not the duty or function of Laclede to attempt to control the method and manner by which Bangert undertook to remove this obstruction. Bangert's employees were not under Laclede's control. "It would be difficult for the various utilities engaged in public projects to supervise the work of one another." Bakovich, supra, 195 N.E.2d, l. c. 263 [2]. It was the act of Bangert's employees—the manner in which they dug around and pried on the stump—that caused the breakage of the main and pipes. If the method employed to remove the stump constituted negligence it was not the duty of Laclede to protect plaintiff in advance from the prospective negligence of his employer, Bangert. As stated in Bakovich, supra, 195 N.E.2d, l. c. 263: "Defendant owed plaintiff no duty to protect him from the negligence of his employer." Laclede had not been requested by Bangert to re-

route the gas main or to shut off the service line. It would be unreasonable under these circumstances to impose upon Laclede the duty to volunteer to shut off service to all the customers on the main by cutting off the gas at some point west of the stump, on the unlikely possibility that the main might be broken in removing the stump. Shutting off the gas would have resulted in an outage by which all customers on the main east of that point would have been deprived of gas service. The rights of the public are to be weighed against the likelihood of the danger. The lack of wisdom involved in adopting such a principle is well illustrated by the following quotation from Alesi v. City of New York, 9 A.D.2d 236, 192 N.Y.S.2d 929, 933, aff. 12 N.Y.2d 703, 233 N.Y.S.2d 481, 185 N.E.2d 916: "Since the cables themselves were adequately safeguarded in the physical sense, was there then an additional duty on the part of any of defendants to take further steps, assuming that they had become aware of construction jobs in the vicinity of the cables? It has been urged by plaintiff that as soon as Edison learned that workmen were nearby it should have de-energized or rerouted its cables to render the area completely safe. A duty to take precautions which are completely disproportionate to the dangers presented cannot reasonably be imposed. To de-energize all the cables on East 38th Street simultaneously would have deprived large areas of the city of electrical power. There would have been no light, no transportation, no refrigeration, no elevator service, and all would be affected—public and private services alike. If this had to be done for each excavation in the city streets adjacent to an Edison electrical installation, the city would virtually become paralyzed, for thousands of such excavations are made every year. There was no duty under such circumstances to de-energize the cables. (Nicholas v. New York State Electrical & Gas Corp., 283 App.Div. 291, 127 N.Y.S.2d 490, affirmed 308 N.Y. 930, 127 N.E.2d 84)."

We conclude that Laclede had no duty to shut off the gas before the stump was removed. Laclede's failure to then shut off the gas, according to plaintiff, was the "failure to control" referred to in Instruction No. 1. It was error to submit the case to the jury on this theory.

This leaves for decision the question of Laclede's alleged failure to warn plaintiff of the accumulation of gas and to leave the area. Plaintiff contends that Laclede's employees, having arrived at the scene seven minutes prior to the explosion, were cognizant of the dangerous situation, heard the gas escaping, were alerted to the immediate danger of explosion, and had a duty in the exercise of the high degree of care imposed upon gas distributors to warn persons in the vicinity to immediately vacate the area; that a warning could have been given in time and if given would have been effective to prevent plaintiff's injury, but that Laclede failed to warn plaintiff.

Was there a duty on Laclede to bring personal notice to plaintiff that the gas pipe had been severed and to warn him individually to leave the area? The following factors enter into the determination: Laclede took no part in the stump removal operation during which the gas pipe was broken and had no control over or right to control the acts and conduct of Bangert's employees. The gas pipe was broken by the act or negligence of plaintiff's fellow employees who were working for Bangert, and not by Laclede. Bangert's supervisory personnel were present when the break occurred. They knew that the gas pipe was broken and that gas was escaping. They notified Laclede of the occurrence of the break. It is common knowledge that natural gas is inflammable and explosive. A member of Laclede's leak crew, summoned to the scene, promptly cautioned plaintiff's superior, a Bangert foreman, that he had better get his men out of the vicinity. Plaintiff was not visible to persons standing on ground level. Laclede did not know

that plaintiff was in the sewer pipe, although Laclede may be presumed to have known Bangert's *modus operandi,* having done work in connection with the project for some months previously. No notice or warning was given plaintiff of the existence of the danger, either by Bangert or Laclede.

■ We are of the opinion that plaintiff did not make a submissible case on failure to warn. It is our conclusion that where work is being done in a public street by employees of an independent contractor and an underground gas line owned and controlled by a gas distributing company is ruptured as a result of which natural gas in dangerous quantities is released there is a duty on the gas company to warn the employees of the independent contractor of the danger, but that this duty is satisfied where the supervisory personnel of the independent contractor have personal knowledge of the break in the line and of the escape of the gas and are timely warned by responsible employees of the gas company to clear their employees out of the area.

■ There is a well-established rule that "Warning to the superiors in employment of a person is warning to that person, the employment relation permitting a reasonable assumption that such notice will be communicated in the ordinary course to all employees on the work." Shearman and Redfield on Negligence, supra, Vol. 1, p. 66, § 26. This rule is based upon the principle that an employer has an affirmative duty to warn and instruct his employees concerning the dangers of their work. 35 Am.Jur. Master and Servant § 145; Shearman and Redfield on Negligence, Rev.ed. (1941), § 213; 56 C.J.S. Master and Servant § 287; Levesque v. Fraser Paper Limited, 159 Me. 131, 189 A.2d 375, 379. Since each employee of an independent contractor is under the immediate direction and supervision of his own employer, it has been generally held in cases where the owner of land employs an independent contractor to perform work on the premises and there is a hazardous condition existing in the employment area, that notice to the independent contractor of the dangerous condition is notice to each of his employees and if notice of the condition is given to the independent contractor "the employer of the contractor has performed his duty so far as it applies to the employees of the contractor." Schwarz v. General Electric Realty Corp., 163 Ohio St. 354, 126 N.E.2d 906, 910. This is based upon the duty of the independent contractor to transmit such notice or warning to his individual employees. The employer of the independent contractor can reasonably expect that the latter will adopt necessary safety measures for his employees after having been warned of the danger, on the theory that "The risk reasonably to be perceived defines the duty to be obeyed." Storm v. New York Telephone Co., 270 N.Y. 103, 200 N.E. 659, 661. Accordingly, in such cases, the independent contractor is liable for negligently failing to notify and warn his employee and the employer of the independent contractor is absolved of liability to the employee injured by exposure to the danger. In Storm, supra, a lineman was killed by the falling of a defective telephone pole. Notice of its unsafe condition had been given his employer, who was replacing defective poles for the telephone company. It was held that liability on the part of the telephone company could not be predicated on its failure to give notice to the lineman personally, the court saying, "To require the defendant to bring notice home to every employee * * * who might possibly be involved on this job on penalty of otherwise failing in duty would result in imposing a standard of duty exceeding reasonable bounds * * * Any duty on the part of defendants to warn * * * would ordinarily be discharged when defendant notified all supervisory officials of the decedent." This rule was applied in Gulf Oil Corporation v. Bivins, 5 Cir., 276 F.2d

753, an action by an employee of an independent contractor hired by Gulf's lessee to rework an oil well for injuries sustained in a gas explosion while working on the well. Gulf and the lessee warned the chief of plaintiff's crew of the danger but the warning was not communicated to plaintiff. Quoting from Storm, supra, the court of appeals held that the owner or occupier of property has a duty to warn employees of an independent contractor who has undertaken to do work on the property, of dangers that are hidden on or inhere in that property, and that *this duty is discharged if those in charge of the work for the independent contractor are given warning or have knowledge of the danger*. In Schwarz, supra, plaintiff was an employee of a construction contractor unloading structural steel on defendant's premises beneath high tension wires. Defendant was not in control of the work area and did not participate in the work. Defendant gave notice to the contractor of the potential danger of its crane touching electric wires. The warning was not brought to plaintiff's attention. Plaintiff was injured when the crane touched the wires. Recovery was denied under the rule that under these circumstances notice to the independent contractor of the hazards within the employment area is notice to his employees, and that if notice is given to the former the employer of the independent contractor has performed his duty to the latter. The court cited, among other cases, Grace v. Henry Disston & Sons, 369 Pa. 265, 85 A.2d 118 and Valles v. Peoples-Pittsburgh Trust Co., 339 Pa. 33, 13 A.2d 19. For other applications of the rule see Hotel Operating Co. v. Saunders' Adm'r, 283 Ky. 345, 141 S.W.2d 260; Whitlow v. Seaboard Air Line Railroad Co., 4 Cir., 222 F.2d 57; Florida Power & Light Co..v. Robinson, Fla.Sup., 68 So. 2d 406; American Mut. Liability Ins. Co. of Boston v. Chain Belt Co., 224 Wis. 155, 271 N.W. 828, and Levesque v. Fraser Paper Limited (1963) 159 Me. 131, 189 A.2d 375.

Logically the rule is as fully applicable to situations arising in connection with work done by an independent contractor on a public works project as to those involving work performed on private premises. It has been so applied. In Bakovich v. Peoples Gas Light and Coke Co., 45 Ill. App.2d 182, 195 N.E.2d 260, Bakovich, an employee of the Corbett Company, a contractor excavating for an expressway, was injured when another employee of Corbett, while operating a power shovel, broke into a gas main of defendant company. Corbett's superintendent, familiar with the defendant's underground system, knew of the existence and location of a certain 6-inch main. He did not tell Corbett's foreman Curry or the shovel operator Hallberg of the existence of the main. Plaintiff was parked nearby in a truck. The shovel broke the main, an explosion and fire occurred, and plaintiff was hospitalized. The court said, 195 N.E.2d, 1.c. 263 [2]: "It was the duty of Corbett to warn Curry and Hallberg of the existence of these mains and to protect plaintiff from injury. No such duty devolved upon defendant. * * * The purpose of warning is to apprise a party of the existence of a danger of which he is not aware and thus to enable him to protect himself against it. The Corbett Company and its superintendent knew the location of defendant's mains. There is no duty to warn against risks which are known and obvious." In Alesi v. City of New York, 9 A.D.2d 236, 192 N.Y.S.2d 929, affirmed 12 N.Y.2d 703, 185 N.E.2d 916, Alesi, an employee of a subway company (Empire) engaged in constructing new conduits in mid-Manhattan to hold telephone cables was working in a ditch on the sidewall of which were exposed 16 concrete ducts encasing defendant Consolidated Edison's cables carrying 11,000 volts of electricity Alesi was killed when his pneumatic jackhammer pierced the concrete wall and penetrated to the high-tension electric cables inside. Empire's engineers, fellow employees of Alesi, were informed of the danger. It was charged

that Edison failed to give warning of the dangerous condition. The court said, 192 N.Y.S.2d, l.c. 934: "Nor can liability be predicated upon the failure of defendants to give warning of the alleged dangerous condition to plaintiff's intestate. The testimony is clear that the engineers and foreman of Empire [deceased's employer] were fully aware of the presence of dangerous high-tension cables in the adjoining duct bank. Hence, the imparting of such information to Empire would have given them no more than what they already knew."

Bangert's assistant superintendent and foreman had full knowledge of the break in the main and that gas was escaping. To them the danger to persons in the area was obvious and apparent. Because of the commonly known propensities of natural gas to burn and ignite, knowledge by Bangert of the escape of the gas was knowledge of the danger existing in the area in which it was being discharged. Bangert's men notified Laclede of the break in the main and that gas was escaping. There was no duty on Laclede to turn around and notify Bangert of these facts, of which Bangert as Laclede's informant already had knowledge. There is no duty to warn one of a condition of which he is already informed. The duty to warn Bangert's employees personally and individually devolved upon Bangert. Plaintiff, who was working under the surface of the ground, out of sight and sound, and oblivious of what had happened, was entitled to assume that his superiors in the Bangert organization would inform him of dangers of which they were aware, arising in the course of his employment. Laclede had the right reasonably to assume that Bangert's foreman would take the necessary precautions for the protection of its employees, and inform and warn any of them who might be in danger. There was no duty on Laclede to conduct a search for all employees of Bangert who might be working in concealed places unknown to Laclede, and bring personal notice to each such individual employee. If this standard of care were required not only would Laclede be obliged to place employees at every job site in the city where any possibility of disruption of its mains and pipes might exist, but also would be required at its peril, when a disruption occurred, to seek out and warn every employee of every independent contractor, regardless of his superior's knowledge of the danger and regardless of his location —even if underground, out of sight, or his presence was not readily or reasonably discernible. The law does not exact an impractical, unreasonable and unduly burdensome degree of care. Alesi, supra, wherein the court said, 192 N.Y.S.2d, l. c. 935: "In view of the hundreds or even thousands of excavations which were in some stage of progress throughout the city at that time, there was no obligation on the part of defendants to station persons on the sites solely to give warning to workmen. * * * To require the constant attendance of inspectors at the site of each excavation when the supervisors were already aware of the conditions would be unreasonable. '* * * The law ought not to, and does not, exact an unreasonable amount of care from anyone.' (Schmeer v. Gas Light Co. of Syracuse, 147 N.Y. 529, at page 541, 42 N.E. 202, at page 205, 30 L.R.A. 653). See also Dolan v. City of New York, 5 A.D.2d 300, 171 N.Y.S.2d 724."

The trial court properly set aside the verdict and entered judgment for Laclede in accordance with its motion for a directed verdict. The judgment is affirmed.

HIGGINS, C., concurs.

WELBORN, C., not sitting.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.