**Ricardo and Margie TREJO, Appellants,**

v.

**KELLER INDUSTRIES, INC., Respondent.**

No. WD 44833.

Missouri Court of Appeals, Western District.

March 24, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1992.

Application to Transfer Denied June 2, 1992.

Paul L. Redfearn, Kansas City, for appellant.

Paul Kaulas, Chicago, Ill., David R. Buchanan, Robert R. Houske, Kansas City, for respondent.

Before TURNAGE, P.J., and KENNEDY and BERREY, JJ.

BERREY, Judge.

Plaintiffs Richard and Margie Trejo, (appellants herein) appeal from the jury verdict in favor of the defendant Keller Industries, Inc., (respondent herein).

Respondent manufactures extension ladders and places them in the stream of commerce. The ladders are equipped with locks which are designed to function when the ladder is extended. In the instant case the ladder locks seemed to engage, but, when weight was placed thereon, the extension telescoped and appellant Ricardo Trejo was thrown to the ground, causing him to sustain serious injuries. The appellants refer to the defect in the ladder as false locking and false latching.

The facts that gave rise to this incident are as follows. The appellant Ricardo Trejo was assisting a chimney sweep in cleaning his chimney. Appellant used the Keller ladder to get on top of his roof. He positioned the ladder and extended it to the roof line of his home. He then checked to see the ladder was secure and that the ladder locks were engaged. Appellant went up the ladder to aid Conchola, who was on the roof cleaning the chimney. While they were on the roof a gust of wind blew the ladder to the ground. It remained in the extended position. John Harper, a neighbor who lived across the street, was outside and appellant called to him and requested he come and set the ladder back up. Harper got Pacheco, who was working inside the appellants' home on the chimney, and together they placed the extension ladder back against the house.

Appellant then began his descent. He testified he did not inspect the ladder locks because he could not see them from the height and position he was at. Harper was standing below and told him to come down. Appellant put his left hand on the ladder rail, and stated the ladder felt solid. He then first put his left foot and then his right foot on the ladder rung and it felt solid. Appellant then heard a noise and the extension portion of the ladder began to slide down into the base section. Appellant was thrown to the ground and could not get up. He noticed the ladder was still against the house but the extension had telescoped into the base section. Both Douglas Hamer, a next door neighbor, and Cynthia Vance, a paramedic, confirmed the ladder's location and positioning.

Appellants allege the ladder locks were defective because they were capable of false locking.

Appellants' expert witnesses, Dr. Martin Eisenberg and Mr. Boulter Kelsey, testified Trejo's ladder locks were capable of only becoming partially engaged. They further testified that when the ladder is in this position it can feel secure but the lock may suddenly roll behind the rung and become disengaged causing the extension to telescope into the base section of the ladder.

Appellant Ricardo Trejo had consumed several beers around lunch time on the day of the accident and the trial court permitted defendant's counsel to refer to this fact. Appellants, therefore, voir dired the jury about concerns over drinking alcoholic beverages. Juror Newkirk stated he would

have a strong feeling against using any "equipment or something and drinking." He also stated he could "probably" keep an open mind and decide the case by hearing all the evidence.

Another juror, Leroy Caton, stated he'd been in corporate management for forty-eight years and it would, therefore, be difficult for him to be fair.

Anticipating respondent's argument that false latching cannot occur during ordinary and reasonable use of the ladder the appellants sought to present evidence of other such occurrences similar to the instant matter arising out of the use of Keller ladders. The trial court sustained respondent's motion to exclude this evidence.

Appellants allege four points of error on appeal. They first contend the trial court erred in excluding the proposed evidence of other false locking occurrences that occurred with use of the Keller ladder. Secondly, they contend the trial court erred in denying appellants' motion to strike veniremen Robert Newkirk and Larry Caton for cause. They next contend the trial court erred by instructing the jury that appellants' claim could be barred by the doctrine of contributory fault because there was no evidence to support this instruction. And finally, appellants contend the trial court erred in the manner it instructed the jury regarding the comparative fault of appellant.

■ In their first allegation of error, appellants contend the trial court erred in refusing to admit evidence of other false locking occurrences involving the Keller ladder. The trial judge sustained respondent's objection to the admission of other similar occurrences with the locking mechanism of the Keller ladder. In doing so he was using his discretion and unless he acted arbitrarily, capriciously or irrationally, his decision must be upheld. *United States v. Robinson,* 560 F.2d 507, 514–15 (2d Cir.1977).

■ The trial court may weigh the probative value, determining whether or not the proffered evidence would have a prejudicial effect when considered in light of what it can observe and any special trial situation. *Pierce v. Platte–Clay Electric Coop., Inc.,* 769 S.W.2d 769, 774 (Mo. banc 1989).

■ None of the eight cases which appellants sought to introduce involved a ladder extended in the conventional manner, blown down by the wind, "walked up" to its original position against the side of the house with no readjustment of the ladder. One case involved a double locking extension ladder as opposed to a single ladder lock as in the instant case. Another case had a Keller ladder placed against the house and the person on the roof pulled the extension up and then let it go back until it "clanked." He then stepped onto the ladder and it telescoped. Two other cases offered ladders using a double lock mechanism as opposed to the single lock. Another case involved a ladder with different side rails. This altered the geometry of the ladder. The claimant therein climbed the ladder without incident. There was no intervening disturbance of the ladder. Upon his descent the ladder allegedly telescoped.

The above mentioned occurrences did not involve the same model ladder nor did any of the other ladders sustain a fall and subsequent repositioning. The trial court stated the probative value of the offers of proof was far overcome by the prejudicial effect.

■ Prejudice may result when the offered evidence would tend to mislead or confuse the jury, is cumulative in nature, or requires an undue delay or waste of time in developing and evaluating the evidence. *Jones v. Terminal RR Ass'n of St. Louis,* 242 S.W.2d 473, 477 (Mo.1951). The court in Jones further stated:

Exclusions of evidence of collateral matters is demanded when the evidence introduces many new controversial points and a confession of issues would result, or there would be an unfair surprise or an undue prejudice disproportionate to the usefulness of the evidence.

*Id.* citing, 2 *Wigmore Evidence,* §§ 442–443, 458.

The other incidents appellants sought to introduce all took place after the appellant's accident and they were offered to prove the dangerous condition of the ladder; not notice. The appellants, therefore, had to establish the fact that the offers of proof were substantially similar to the other occurrences. *Wolf v. Procter & Gamble Co.*, 555 F.Supp. 613 (D.N.J.1982); 1 J. Weinstein and N. Berger, *Weinstein's Evidence* § 401 [no. 10]. The appellant failed to do this and therefore point I is denied.

■ The appellants next complain the trial court should have stricken for cause veniremen Newkirk and Caton. The consumption of alcohol and the use of the ladder became subject for an exchange involving the prospective juror, the attorneys and the trial court.

Because a trial court is in better position to gauge the effect of certain question on the jury panel, a trial court is vested with broad discretion during jury selection, and its decision will not be overturned unless there is a clear abuse of that discretion. Any doubts will be resolved in favor of the trial court. *Collins v. West Plains Memorial Hosp.*, 735 S.W.2d 404, 405 (Mo.App. 1987).

■ Appellants first injected alcohol into the equation during voir dire. The trial judge then took over the voir dire and examined Newkirk himself. Newkirk stated he had "strong feelings against using any equipment or something and drinking." The trial judge inquired of Newkirk, "I think we all do. That's my point. The question is can you hear all this evidence and keep an open mind and decide the case by what, by hearing all of the evidence. Can you do that?" Venireman Newkirk responded, "Probably." The trial judge satisfied himself regarding the venireman, his demeanor and his response and he exercised his discretion by overruling appellants' motion to strike. Newkirk was, however, ultimately stricken from the jury panel.

In *State v. Wynn*, 783 S.W.2d 447, 450 (Mo.App.1990), the court held that a trial court is not obligated to sustain a challenge for cause where the venireperson affirmed his or her impartiality during general inquiry by counsel at the close of voir dire.

In the instant case the judge asked Newkirk if he could hear the evidence, keep an open mind and decide the case on the evidence. The venireman responded that he probably could. The judge did not strike Newkirk for cause and did not abuse discretion.

■ With regard to venireman Caton the court again denied appellants' motion to strike for cause. Caton had been in corporate service for forty-eight years and contended he had accumulated certain feelings over this period of time.

Plaintiffs' counsel asked him:

MR. REDFEARN: And because of those 48 years of feelings that have accumulated over those years, do you feel that you would be unable to sit as an impartial juror to impartially listen to the evidence in this case and impartially follow the instructions of the Court?

VENIREPERSON: *I think I would be able to* if it was presented right so that I would understand what I was doing.

(Emphasis added.)

The respondent's counsel inquired generally if the panel would follow the court's instructions in the case. No response was forthcoming which satisfied defendant's counsel and trial court as to Caton's impartiality.

Further, it was never established that Caton's forty-eight years corporate experience would produce prejudice. His demeanor did not suggest a bias in favor of corporations. The important question is whether or not his 48 years of employment would prevent Mr. Caton from being impartial in listening to the evidence and following the trial court's instruction. *State v. Johns*, 679 S.W.2d 253, 263–64 (Mo. banc 1984). When he was asked this specific question, Mr. Caton said he believed he could be impartial.

The trial court did not err in denying appellant's motion to strike the venireperson for cause. Nothing in the record indicates Caton would not be impartial, listen

to the evidence, and follow the court's instructions.

Finally, in Point II the appellants also allege trial court error in not providing a full venire panel from which they could make their strikes. *State v. Lovell*, 506 S.W.2d 441, 443 (Mo.1974). The appellants' position is premised on their assertion that Newkirk and Caton were not qualified and by leaving them on the panel, appellants were denied their right to three peremptory strikes.

Following the strikes there were four jurors left to choose for an alternate. The court stated:

> Now, we are going to have a problem on the alternate. We have got 13 total. That takes us down to 22 jurors. Normally on the alternates we take 3 of them, you all pick one and the remaining juror is the alternate.
>
> . . . .
>
> THE COURT: All right. Just to follow along so that my trusty law clerk-bailiff over here follows so we are in sync, I'm going to give you the numbers of the jurors that have been stricken for cause. Juror No. 2, Tippet, Juror No. 3, Daniel Collins, Juror No. 5, Glenn Bird, Juror No. 13, Leon Day, Juror No. 16, Ann Spicer, Juror No. 20, Gail Anthony, Juror No. 23, Theodore Godard, Juror No. 25, Jacquelyn Watson, Juror No. 29, Robert Gordon, Juror No. 31, Randall Horn, Juror No. 34, Scherry Salmon and Juror No. 35, Peggy Smith.
>
> THE CLERK: And 7.
>
> THE COURT: Yes, and Juror No. 7, Bartlett. Does everybody agree that those were the jurors I struck for cause, not necessarily that you agree with what I did but that's what I did, right?
>
> MR. REDFEARN: That's what you did, right.
>
> MR. BUCHANAN: YES.
>
> THE COURT: All right. Now, in the first 18, we have 1, 2, 3, 4, 5, 6—we will just take the last 4, won't we?
>
> MR. REDFEARN: I come to—we come down to 27 for the first, to get the 18.
>
> THE COURT: That's where I come. Do you agree?
>
> MR. BUCHANAN: That looks like it to me, Judge.
>
> THE COURT: Then we have 1, 2, 3, 4—yes, we have Juror No. 28, Robert Newkirk, Juror No. 30, Vern Brown, Juror No. 32 Michael Krogh and Juror No. 33 Mark Davis. Those will be the alternates. Everybody agree with that?
>
> MR. REDFEARN: I agree.
>
> MR. BUCHANAN: Yes, Your Honor.
>
> THE COURT: Plaintiff makes 1 strike, defendant makes 1 strike, the remaining 2 jurors will be 2 alternates. Gentlemen, try to make your strikes as soon as possible. Plaintiff make his strikes, notifies the defendant and my law clerk and the defendant makes his strikes and notifies the plaintiff and my law clerk. Let me know when you are ready.

At one point, appellants waived their right to a twelve person jury and stipulated to have the case heard by only eleven jurors. The case was ultimately tried to a jury of twelve, plus two alternates. Appellants' Point II is denied.

For their third allegation of error, appellants contend the trial court erred in submitting Instructions No. 9 and No. 17. Appellants contend that neither instruction was supported by competent and substantial evidence. Both instructions were based on the doctrine of contributory fault. Instruction No. 9 provided:

> In Verdict A, on Plaintiff Ricardo Trejo's claim for personal injury based on product defect, your verdict must be for Defendant Keller against Plaintiff Ricardo Trejo if you believe:
>
> First, when the ladder was used, Plaintiff Ricardo Trejo knew of the danger as submitted in Instruction Number 7 and appreciated the danger of its use, and
>
> Second, Plaintiff Ricardo Trejo voluntarily and unreasonably exposed himself to such danger, and
>
> Third, such conduct directly caused or directly contributed to cause any damage

Plaintiff Ricardo Trejo may have sustained.

and Instruction No. 17 provided:

In Verdict B, on Plaintiff Margie Trejo's claim for damages as a result of any injury to her husband Ricardo Trejo based on product defect, your verdict must be for Defendant Keller against Plaintiff Margie Trejo if you believe:

First, when the ladder was used, Plaintiff Ricardo Trejo knew of the danger as submitted in Instruction Number 15 and appreciated the danger of its use, and

Second, Plaintiff Ricardo Trejo voluntarily and unreasonably exposed himself to such danger, and

Third, such conduct directly caused or directly contributed to cause injury to Plaintiff Ricardo Trejo and Plaintiff Margie Trejo thereby sustained damage.

▆▆▆ Contributory fault is a complete defense to a strict liability action in Missouri. *Strang v. Deere & Co.*, 796 S.W.2d 908, 914 (Mo.App.1990). The requirements to make a defense of contributory fault are close to those required by the legal principle of assumption of risk in that a defendant must show that a plaintiff voluntarily and unreasonably exposed himself to a known danger. *Id.* at 914–15.

▆▆▆ It appears, from a review of the record, that Keller established during its cross examination of Trejo, that Trejo knew of the danger of using a ladder when the locks are not fully engaged. Trejo testified that in his experience of using ladders, for safety purposes, he would always conduct a stability check before ascending or descending an extended ladder. Trejo continued his testimony by testifying as to what a stability check would involve. He further testified he understood if the ladder rung locks were not fully engaged, the fly section of the ladder could slip, slide down, collapse or telescope into the base section. However, after fully admitting he knew what safety precautions were necessary, he then testified he did not conduct a stability check before descending the subject ladder nor did he visually check to assure full engagement. Keller contended Trejo's failure to conduct these safety checks constituted contributory fault. There was evidence from which the jury could infer that Trejo voluntarily and unreasonably exposed himself to a known danger.

After a thorough review of the record, it is the determination of this court that the trial court did not err in submitting these contributory fault instructions to the jury. Appellants' Point III is denied.

For their final allegation of error, appellants claim the trial court erred in submitting comparative fault instructions. These instructions were numbered 12 and 20. Instruction No. 12 provided:

In Verdict A, on Plaintiff Ricardo Trejo's claim for personal injury based on failure to use ordinary care, you must assess a percentage of fault to Plaintiff Ricardo Trejo, whether or not Defendant Keller was partly at fault if you believe:

First, either

Plaintiff Ricardo Trejo failed to look to see that the ladder locks were fully engaged before descending the ladder, or

Plaintiff Ricardo Trejo failed to determine whether the ladder was stable before descending the ladder, or

Plaintiff Ricardo Trejo failed to ask John Harper whether the ladder locks were fully engaged before descending the ladder, and

Second, Plaintiff Ricardo Trejo, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to Plaintiff Ricardo Trejo.

The terms "negligent" or "negligence" as used in this instruction means the failure to use ordinary care.

The phrase "ordinary care" means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

Instruction No. 20 provided:

In Verdict B, or Plaintiff Margie Trejo's claim for damages as a result of any injury to her husband Richard Trejo based on failure to use ordinary care,

**600**

you must assess a percentage of fault to Plaintiff Ricardo Trejo whether or not Defendant Keller was partly at fault if you believe:

First, either

Plaintiff Ricardo Trejo failed to look to see that the ladder locks were fully engaged before descending the ladder, or

Plaintiff Ricardo Trejo failed to determine whether the ladder was stable before descending the ladder, or

Plaintiff Ricardo Trejo failed to ask John Harper whether the ladder locks were fully engaged before descending the ladder, and

Second, Plaintiff Ricardo Trejo, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause injure to Plaintiff Ricardo Trejo and Plaintiff Margie Trejo thereby sustained damage.

The terms "negligent" or ["]negligence" as used in this instruction means the failure to use ordinary care. The phrase "ordinary care" means that degree of care than an ordinarily careful and prudent person would use under the same or similar circumstances.

First it must be noted that even if the trial court erred in submitting these instructions, the error would not mandate a remand. Because the jury returned a general take-nothing defense verdict in favor of Keller, under other instructions not based on comparative negligence concepts, any error in instructions twelve and twenty constituted harmless error. *Barnes v. Tools & Mach. Builder*, 715 S.W.2d 518 (Mo. banc 1986). In *Barnes* the plaintiff complained that the defendant's comparative fault instruction incorrectly defined the term "fault". The Supreme Court agreed. However, the court noted that while the comparative fault instruction was erroneous, reversal was not required "because the jury found no basis for liability against the defendant and returned a general verdict for the defendant under instructions not dependent on the [contributory fault instruction]". *Barnes*, 715

S.W.2d at 521. In the case at bar, the jury found a general verdict in favor of Keller under instructions not based upon comparative fault. The jury found for Keller on the strict liability submission, and apportioned 100% of the fault to Trejo on the negligence submission. However, in light of the above, after a thorough review, we do not see that the comparative fault instructions were submitted in error. Competent and substantial evidence existed to support the submission of Keller's comparative negligence instructions. It was established that Trejo generally conducted a stability check and that in this instance he failed to do so. Additionally, Keller's expert testified that an individual could visually observe whether the ladder locks were fully engaged from the top of the ladder. There was no error in submitting the above instructions, appellants Point IV is denied. The judgement of the trial court is affirmed.

All concur.